AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

**FILED**

for the

District of Connecticut

2017 NOV -7 P 1:36

US DISTRICT COURT
BRIDGEPORT CT

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* **THE PREMISES KNOWN AS 19 JOLIET COURT, GROTON, CONNECTCUT** | Case No. **3:17 MJ 1713 (WIG)** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* **the Premises known as 19 Joliet Court, Groton, Connecticut, as further described in Attachment A.**

located in the _____ District of **Connecticut** , there is now concealed *(identify the person or describe the property to be seized):*

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **18 U.S.C. §2252A(a)** | **Activities relating to material constituting or containing child pornography** |

The application is based on these facts:
**See Affidavit attached**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Ryan Mahar, Special Agent - Homeland Security Investigations**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **11/7/17**

City and state: **Bridgeport, Connecticut**

/s/ William I. Garfinkel
*Judge's signature*

**William I. Garfinkel, United States Magistrate Judge**
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

IN THE MATTER OF THE APPLICATION     :     Misc. No. _____     2017 NOV -7 P 1:36
OF THE UNITED STATES OF AMERICA      :
FOR A WARRANT AUTHORIZING THE        :     **Filed Under Seal**     US DISTRICT COURT
SEARCH OF THE PREMISES KNOWN AS      :                            BRIDGEPORT CT
19 Joliet Court, Groton, Connecticut :     3:17 mj 1713 (WIG)
                                     :

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Ryan Mahar, being duly sworn, depose and state as follows:

## BACKGROUND OF AFFIANT

1.      I am a Special Agent with Homeland Security Investigations ("HSI"), and I have

been employed by HSI as a Special Agent since July 2011.  Prior to serving as a Special Agent

with HSI, I was employed as a Special Agent with the United States Secret Service ("USSS") for

approximately nine years.  I am presently assigned to the HSI office in Hartford, Connecticut.  I

have received extensive training provided by the Federal Law Enforcement Training Center, the

USSS, and HSI in the investigation and enforcement of laws of the United States.  I have received

training in the area of child pornography (as defined in 18 U.S.C. § 2256) and child exploitation,

and have, as part of my daily duties as an HSI agent, investigated violations relating to child

exploitation and child pornography, including violations pertaining to the possession, distribution,

receipt and production of child pornography, the online enticement of minors, and the traveling in

interstate and foreign commerce to engage in sexual activity with minors, in violation of 18 U.S.C.

§§ 2251, 2252, 2252A, 2422, and 2423.  I have participated in the execution of numerous search

and arrest warrants involving child exploitation and/or child pornography offenses.  I also serve as

a computer forensic examiner with HSI.



2.      I am a "federal law enforcement officer" within the meaning of Federal Rule of
Criminal Procedure 41(a)(2)(C), that is, a government agent authorized to enforce criminal laws
and duly authorized by the Attorney General to request a search warrant.  I am one of the officers
involved in the investigation that is the subject of this affidavit and have personally participated
in the investigation concerning the violations of the federal laws listed herein.

3.      I am currently investigating William MILLETT ("**MILLETT**"), an adult male born
in 1990, who at the time of the offense conduct under investigation was residing in the area of
Lyme, Connecticut, for knowingly accessing with intent to view, receiving and possessing child
pornography and visual depictions of a minor engaged in sexually explicit conduct, in violation of
18 U.S.C. §§ 2252A(a) (hereinafter "the **TARGET OFFENSES**").

4.      I subscribe this affidavit in support of an application for a search warrant pursuant
to Rule 41 for the premises known as:  19 Juliet Court, Groton, Connecticut, which is further
described in Attachment A (hereinafter "the **TARGET PREMISES**"), to locate and seize the
items described in Attachment B.

5.      Based on the information set forth in this Affidavit, I believe there is probable cause
to believe that the **TARGET PREMISES** contain items that constitute instrumentalities, fruits,
and evidence of the **TARGET OFFENSES**, as more fully specified in Attachment B.

6.      The statements contained in this Affidavit are based in part on information provided
by other members of local, state, and federal law enforcement,  my own investigation to include
personal observations, documents and other investigative materials which I have reviewed, as well
my training and experience as a Special Agent with HSI.   Since this Affidavit is being submitted
for the limited purpose of securing a search warrant, I have not included each and every fact known

2



to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the **TARGET OFFENSES** are located within the **TARGET PREMISES**, as more fully described in Attachment A.

## STATUTORY AUTHORITY

7.     This investigation concerns possible violations of 18 U.S.C. §§ 2252A(a) relating to the sexual exploitation of a minor.

8.     18 U.S.C. § 2252A(a) prohibits a person from knowingly mailing, transporting, shipping, receiving, distributing, reproducing for distribution, selling, accessing with intent to view or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.   The statute also prohibits a person from attempting and conspiring to do the same.

## DEFINITIONS

9.     The following definitions apply to this Affidavit:

a.     "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from,

3



that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), and also includes any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. 18 U.S.C. §§ 2252 and 2256(2).

      b.    "Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format. 18 U.S.C. § 2256(5).

      c.    "Sexually explicit conduct" means actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256(2)(A).

      d.    "Minor" means any person under the age of 18 years. 18 U.S.C. § 2256(1).

      e.    "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. Traditionally, IP addresses were either dynamic, meaning an Internet service provider (ISP) assigns a different unique number to a computer every time it accesses the Internet, or static, meaning an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. Generally, the static IP addresses were assigned by those companies who offered "broadband" Internet service, such as through cable or digital subscriber line (DSL), whereas "dial-up" companies would assign their users dynamic addresses. Now, however, as a greater number of American Internet users choose broadband

4



Internet service, many of these users are being assigned what may be colloquially referred to as a "sticky dynamic IP address" or a "sticky IP." A sticky IP is a dynamically assigned IP address that does not change often. The address leases are usually set to long periods and simply renewed upon expiration. The practical effect is that one may observe a user being assigned the same IP address for weeks or months and then assigned another IP address for a similar stretch of time.

      f.      "Kik Messenger", commonly called Kik, is a freeware instant messaging mobile app from the Canadian company Kik Interactive, available free of charge on iOS, Android, and Windows Phone operating systems. It uses a smartphone's data plan or Wi-Fi to transmit and receive messages, photos, videos, sketches, mobile webpages, and other content after users register a username.

## CHILD PORNOGRAPHY PRODUCER AND COLLECTOR CHARACTERISTICS

      10.      Based upon my training and experience, as well as from information provided to me by other law enforcement personnel involved in the investigation of cases involving the sexual exploitation of children, I believe the following traits and characteristics are generally found to exist and be true in cases involving individuals who produce, distribute, and/or collect child pornography:

      a.      The majority of individuals who produce, distribute, and/or collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

      b.      The majority of individuals who produce, distribute, and/or collect child pornography produce, distribute, and/or collect sexually explicit materials, which may consist of



photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

        c.      The majority of individuals who produce, distribute, and/or collect child pornography often seek out like-minded individuals, either in person or over the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. The different Internet based vehicles used by such individuals to communicate with each other include, but are not limited to: P2P, e-mail, e-mail groups, bulletin boards, Internet Relay Chat ("IRC"), newsgroups, instant messaging, and other similar vehicles.

        d.      The majority of individuals who produce, distribute, and/or collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. They almost always maintain their collections in private and secure locations such as their homes or on electronic storage devices.

## BACKGROUND OF THE INVESTIGATION

      11.      On or about September 21, 2017, the office of Homeland Security Investigations (HSI) in Hartford, Connecticut received information that the HSI Cyber Crimes Center (C3) Child Exploitation Investigations Unit (CEIU) is investigating the contents from Freedom Hosting II, a server that hosted multiple websites on The Onion Router (Tor) network. HSI reviewed and identified multiple website forums that focused on the discussion and distribution of material

depicting child exploitation material.

12.     At the end of January 2017, an anonymous hacker accessed and took down the Freedom Hosting II Server.  Several individuals claimed to have interviewed the hacker.  The hacker allegedly stated that they discovered the host went against their own terms of service, which described a zero tolerance policy for child pornography.  The hacker allegedly indicated that over fifty percent of the contents of Freedom Hosting II Server was related to child pornography.

13.     The anonymous hacker publicly published the data from the websites, stripped of child sexual abuse material.  In February 2017, HSI began an investigation of the publicly available data and subsequently issued administrative subpoenas to US based Electronic Service Providers.

14.     The anonymous hacker ultimately provided the contents to include the child sexual abuse material to the Federal Bureau of Investigation (FBI).  HSI provided input to a search warrant affidavit based upon the review of the publicly available data to define what material would be reviewed by law enforcement.  The FBI obtained a search warrant on May 17, 2017, in the Northern District of Maryland for the FBI, HSI and our foreign law enforcement counterparts to review the contents from the Freedom Hosting II Server.  On May 18, 2017, the FBI turned over a copy of the contents to HSI.

15.     To date, HSI has focused on several forums to include the forum titled '█ ████ ████' which had over 46,000 users.  HSI is currently focusing on users who had been active on the forum within the year leading up to the Freedom Hosting II Server hack, that is, within a year of January 2017.

16.     The Department of Justice (DOJ) Child Exploitation and Obscenities Section (CEOS) rebuilt the ██ ████ ████' forum on C3's internal network.  Once an individual entered the ██ ████ ████ forum, they are immediately able to view images of child sexual



7

abuse material. HSI has the capability to view the forum as it appeared to users prior to the site being hacked.

17.    HSI captured screenshots of the users' activity on the forum. This includes the users' profiles, comments made by users within conversational threads on the forum, as well as a review of any images the users posted within their comments. In most instances, child sexual abuse material was recovered with comments made by the targets.

18.    Users were able to input an email address when creating a profile account on the ██ ████ ██ forum. However, there was no email verification process to confirm that these were email accounts that actually belonged to the ██ ████ ██ user. HSI reviewed the email addresses associated with the user accounts to determine which accounts appeared to be valid email accounts provided by US Electronic Service Providers (ESPs). HSI sent administrative legal processes to the US ESPs for these accounts. HSI cannot confirm through this process that the email address provided by each user on the forum belongs to each user identified through legal process.

## PROBABLE CAUSE

19.    A review of the information provided to HSI Hartford revealed the following accounts were created on the ██ ████ ██ forum:

20.    User "bottomboy0303" on the ██ ████ ██ forum joined the forum on April 2, 2016, provided email address "bottomboy0303@gmail.com" (**EMAIL ACCOUNT #1)**, and was assigned User ID: 1982. User "bottomboy0303" made four comments on the forum, all occurring on April 2, 2016. For example, on April 2, 2016, user "bottomboy0303" posted comment: "i would fuck her good" under Image ID # 83, which shows the genitalia of a minor female and was tagged with "██████ AZ01."

8

21.     User "thedarkside03" on the ▇▇▇▇▇ forum joined on July 8, 2016, provided email address "bibottom03@gmail.com" (**EMAIL ACCOUNT #2)**, and was assigned User ID: 31138. User "thedarkside03" uploaded one image and made 26 comments on the forum between July 8, 2016 and November 4, 2016.

22.     On July 8, 2016, user "thedarkside03" uploaded Image ID # 5443 titled "IMG_0121 (1).JPG," which was tagged with "2 butt olds yaer" and was viewed 222 times by other members of ▇▇▇▇iddo forum. Image ID # 5443 appears to show a toddler, approximately two to three years old, standing at the edge of a body of water wearing only a hat and sneakers with buttocks visible. This image also shows an adult female wearing a black bathing suit standing in front of the toddler. In addition, user "thedarkside03" posts comment "this is my son butt what do you think".

23.     On August 21, 2016, user "thedarkside03" posted comment "anyone want to talk dirty email me **EMAIL ACCOUNT #2** i love kids i have three of my own" under Image ID # 5146, which shows an adult male inserting his penis into the vagina of a minor female who is laying on her stomach and was tagged with "slut".

24.     On August 21, 2016, user "thedarkside03" posted comment "i would make her my little slave an do as i say" under Image ID # 5325, which shows a naked adult male pulling the blond hair of a naked minor female, who appears to be in distress and is wearing a black collar with metal spikes. The image was tagged with "cry" and contains caption, "Imagine hurting and abusing and torturing this helpless little bitch, punishing her tender little body for hours, just working on her and making her scream and cry in pain, oh yes…"

25.     On August 21, 2016, user "thedarkside03" posted comment "i want to fuck her with you big men" under Image ID # 6452, which shows an adult male who appears to be raping a

minor female from behind and pulling her blond hair.  The image was tagged with "tpax".

26.    On August 23, 2016, user "thedarkside03" posted comment "anyone want to talk dirty email me **EMAIL ACCOUNT #2** i have three kids" under Image ID # 6488, which shows the genitalia of a bent over minor female photographed from behind and was tagged with "ass girl pussy".

27.    On August 24, 2016, user "thedarkside03" posted comment "want to talk dirty email me **EMAIL ACCOUNT #2** i have three kids or kik me willsterman69" under Image ID # 6458, which shows a penis penetrating the vagina of a minor female not visible above the waist and was tagged with "fuck".

28.    On August 17, 2017, Kik Interactive Inc. responded to a Department of Homeland Security Summons requesting subscriber information for Kik user "willsterman69". Kik Interactive Inc. advised that Kik user "willsterman69" is subscribed to Ed ANONYMOUS," using an unconfirmed email address of dickweeb@gmail.con (sic) (hereinafter "**KIK ACCOUNT #1**"). Kik Interactive Inc. also advised that the Kik account for user "willsterman69" was created on March 22, 2016, and was accessed on September 24, 2016 from IP Address 76.23.134.53 operated by Comcast.

29.    On November 4, 2016, user "thedarkside03" posted comment "want to chat or trade pics email me i have three kids an love to talk dirty **EMAIL ACCOUNT #3**" under Image ID # 7260, which shows two hands inserting a penis into a vagina of a minor female who is not visible above her waist due to a red striped blanket or clothing and was tagged with "spritz".

30.    On May 31, 2017, Google Inc. responded to a Department of Homeland Security Summons requesting subscriber information for **EMAIL ACCOUNT #1** and **EMAIL ACCOUNT #2**.



31.     Google Inc. advised that **EMAIL ACCOUNT #1** is subscribed to Jim ANONYMOUS, was created on April 1, 2016, from IP Address 66.212.197.110, and is assigned account number 1061763127020.  Google Inc. advised **EMAIL ACCOUNT #1** was last accessed on April 2, 2016, but Google Inc. did not provide any IP Address login history, despite a request for this information.

32.     Google Inc. advised that **EMAIL ACCOUNT #2** is subscribed to William **MILLETT**, was created on December 14, 2015, from IP Address 166.170.20.205, and is assigned account number 40881002735.  Google Inc. advised that **EMAIL ACCOUNT #2** was accessed on January 7, 2017, from IP Address 216.255.167.77; on January 7, 2017, from IP Address 174.255.193.127; on January 9, 2017, from IP Address 174.255.205.141; and on January 30, 2017, from IP Address 2601:18a:417f:f8fb:4d2f:9fbc:bc68:d08d.

33.     On August 24, 2017, Google Inc. responded to a second Department of Homeland Security Summons requesting subscriber information for **EMAIL ACCOUNT #1**, **EMAIL ACCOUNT #2**, and **EMAIL ACCOUNT #3**.

34.     Google provided the same subscriber and registration information for **EMAIL ACCOUNT #1** listed above in par. 31.

35.     Google provided the same subscriber and registration information for **EMAIL ACCOUNT #2** listed above in par. 32, but Google did not provide any IP Address login history despite a request for this information.

36.     Google advised that **EMAIL ACCOUNT #3** is subscribed to Jim ANONYMOUS, was created on November 3, 2016, from IP Address 198.223.207.160 operated by Verizon Wireless, and is assigned account number 999206153266.  Google further advised that **EMAIL ACCOUNT #3** was last accessed on November 7, 2016, but Google did not provide any IP



Address login history, despite a request for this information.

37.     As discussed above, I am aware based on my training and experience that individuals with a sexual interest in children communicate with each other using a variety of communication methods such as P2P, e-mail, chat rooms, bulletin boards, instant messaging, and other social media applications.  I am also aware that due to the physical distance between users of the internet, they would need a reliable electronic method of communication to chat and transfer files, which can easily be accomplished with email.

### Identification of William MILLETT

38.     As stated in par. 32 above, William **MILLETT** is the subscriber of **EMAIL ACCOUNT #2**.  Searches conducted by the HSI Cyber Crimes Center (C3) using CLEAR, a commercially available database, revealed an individual in Connecticut named William **MILLETT**, residing at 72-2 Cove Road, Lyme, Connecticut.  This search also revealed **MILLETT** is related to Alexandria Reed.

39.     Searches in the Connecticut Department of Motor Vehicles database revealed a registered driver in Connecticut named William **MILLETT** ▮▮▮▮ ▮▮▮▮▮), residing at ▮▮▮ Cove Road, Lyme, Connecticut.  **MILLETT** is assigned Driver's License ID ▮▮▮▮▮▮3.  The photograph for **MILLETT** on file with the Connecticut Department of Motor Vehicles shows an adult white male with blond hair.  Searches in the Connecticut Department of Motor Vehicles database also revealed a registered driver in Connecticut named Alexandria Reed (DOB: ▮▮▮▮), residing a▮ ▮▮ Old Colchester Road, Uncasville, Connecticut.  Reed is assigned Driver's License ID ▮▮▮▮▮▮ The photograph for Reed on file with the Connecticut Department of Motor Vehicles shows an adult white female with brown hair.



## Connection of William MILLET to TARGET PREMISES

40.     A WHOIS[1] search for IP Address 216.255.167.77, used on January 7, 2017, at 4:04 AM UTC (January 6, 2016 at 11:04 AM EST) to access **EMAIL ACCOUNT #2**, which is subscribed to William **MILLETT**, revealed it is operated by Thames Valley Communications Inc., located at 295 Meridian Street, Groton, Connecticut.

41.     On June 20, 2017, Thames Valley Communications responded to a Department of Homeland Security Summons requesting subscriber information for IP Address 216.255.167.77 used on January 7, 2017, at 4:04 AM UTC (January 6, 2017, at 11:04 AM EST).  Thames Valley Communications advised IP Address 216.255.167.77 was subscribed to Rodeway Inn, 425 Bridge Street, Groton, Connecticut, telephone number 860-445-6550 and is assigned Account Number 016801.  Thames Valley Communications advised the lease for IP Address 216.255.167.77 began on January 27, 2016 and ended on March 16, 2017.

42.     On October 18, 2017, the Rodeway Inn located at 425 Bridge Street, Groton, CT, provided records in response to a Department of Homeland Security Summons.  These records included a receipt showing that William **MILLETT**, ▮▮▮ Cove Road, Old Lyme, CT 06371, checked into Room 112 of the Rodeway Inn on January 6, 2017, at 3:15 PM EST and checked out on January 7, 2017 at 11:27 AM EST.  **MILLETT** paid $51.74 using Visa card bearing number 4117 7640 2292 2374.  Based on these records, **MILLETT** was a registered guest at the Rodeway Inn in Groton, CT on January 7, 2017 at 4:04 AM UTC (January 6, 2017 at 11:04 PM EST) when **EMAIL ACCOUNT #2** was accessed from IP Address 216.255.167.77.

43.     Internet searches for William **MILLETT** located a publicly available Facebook profile posted at https://www.facebook.com/william.millett.  The profile picture for this Facebook

---

[1]  WHOIS is a query that is widely used to search databases that store the registered users or assignees of an internet resource such as an IP Address.

account shows an approximately 25–30 year old white male with blond hair holding a baby wrapped in a blanket, which was posted on September 3, 2016. The adult male with blond hair in this photograph on Facebook is similar in appearance to the photograph of William **MILLET** on file with the Connecticut Department of Motor Vehicles (DL ID: ███████ ). An additional photograph posted to this Facebook account shows an adult white female with brown hair kissing **MILLETT**.

44.    A search of **MILLETT**'s Facebook friends revealed a publicly available profile for Alex Millett. The Facebook profile for Alex Millett is located at https://www.facebook.com/reedpapamonk and contains multiple photographs of an adult white female with brown hair similar in appearance to the photograph of Alexandria Reed on file with the Connecticut Department of Motor Vehicles (DL ID: ███████ ). An additional photograph posted on September 18, 2017, to Alex Millett's Facebook account shows Alex Millett posing at an aquarium with three children ranging in ages from infant to approximately four years old. A comment posted for this photograph contains "You have 3 now?!". The number of children in this photograph (3) posing with Alex Millett matches information posted on August 21, 2016 by user "thedarkside03" in the "███████ ███████ forum with comment "anyone want to talk dirty email me **EMAIL ACCOUNT #2** i love kids i have three of my own," under Image ID # 5146 which shows an adult male inserting his penis into the vagina of a minor female.

45.    A review of the IP Addresses obtained from Facebook pursuant to a Department of Homeland Security Summons for account "reedpapamonk," which is subscribed to Alex Millett, revealed that IP Address 66.212.197.110 was used on March 11, 2016 to access Facebook account "reedpapamonk". This same IP Address was also used on April 1, 2016 to create **EMAIL ACCOUNT #1,** which was then used to register user "bottomboy0303" on the "███████ ███████"

14



forum. User "bottomboy0303" made four comments including "i would fuck her good" under Image ID # 83 showing the genitalia of a minor female.

46. In addition, a review of the IP Addresses obtained from Facebook for account "reedpapamonk" subscribed to Alex Millett revealed IP Address 76.23.134.53 was used on 8/29/16 to access Facebook account "reedpapamonk". This same IP Address was also used on 9/24/16 to access **KIK ACCOUNT #1**, which was referenced in a comment posted on 8/24/16 by user "thedarkside03" on the ███████ ███████" forum. The comment by user "thedarkside03" stated "want to talk dirty email me **EMAIL ACCOUNT #2** i have three kids or kik me **KIK ACCOUNT #1**" and was posted under Image ID # 6458 which shows a penis penetrating the vagina of a minor female not visible above the waist.

47. The above information in Paragraph 45 shows that Alex Millett's Facebook account was accessed in a span of a few weeks by the same IP Addresses used to access **EMAIL ACCOUNT #2** and **KIK ACCOUNT #1**, both associated with an user account on the ███ ███ ███ forum. I know from my training and experience that the same IP Address used to access multiple accounts across a date range may indicate that the IP Address remained assigned to a residence or business for a period of time before the IP Address was reassigned. Therefore, the operator of **EMAIL ACCOUNT #1**, **EMAIL ACCOUNT** #2, **KIK ACCOUNT #1**, and Facebook account "reedpapamonk" subscribed to Alex Millett were in the same physical location when accessing the accounts indicating these account holders may reside together or be acquainted with each other.

48. A further search of Alex Millett's publicly available Facebook profile revealed a publicly available profile for Susan Reed. Susan Reed appears in commercially available databases as an older relative of Alexandria Reed with a shared address located at ███ Old

15



Colchester Road, Uncasville, CT.

49.     The publicly available Facebook profile for Susan Reed is located at
https://www.facebook.com/susan.reed.18 and contains multiple photographs of a white female
approximately 40–50 years old.   Reed also posted the same photograph as was posted on
September 18, 2017, to Alex Millett's Facebook account showing Alex Millett posing at an
aquarium with three children ranging in ages from infant to approximately four years old.

50.     An additional photograph posted to the Facebook account of Susan REED on July
7, 2016, shows Alex Millett holding what appears to be an approximately two year old female
child on the banks of a pond.   This photograph shows a similar beach area and water to the
photograph posted on July 8, 2016, by user "thedarkside03" to the "█████████" forum.   The
photograph posted by user "thedarkside03" to the ██████████ forum shows a toddler,
visible from behind, approximately two – three years old, standing at the edge of a body of water
wearing only a hat and sneakers with buttocks visible and the comment "this is my son butt what
do you think".

51.     A review of the IP Addresses obtained from Facebook pursuant to a Department of
Homeland Security Summons for William MILLETT's Facebook account located at
https://www.facebook.com/william.millett revealed this account was last accessed on September
3, 2017, at 7:13 PM UTC (2:13 PM EST) from IP Address 71.235.187.155.   A WHOIS search for
IP Address 71.235.187.155 revealed it is operated by Comcast Communications ("Comcast").

52.     Comcast provided records for IP Address 71.235.187.155 pursuant to a Department
of Homeland Security Summons.   Comcast advised that IP Address 71.235.187.155 used on
September 3, 2017 at 7:13 PM UTC (2:13 PM EST) was assigned to the **SUBJECT PREMISES**
and was subscribed to Ashley Millett with telephone number ████-6694 and email address



williammillett253@comcast.net. Comcast advised that IP Address 71.235.187.155 was assigned to this account beginning on May 29, 2017 until October 30, 2017.

53.    On October 31, 2017, surveillance conducted at the **SUBJECT PREMISES** revealed that a gold Chrysler 300M with Connecticut registration AH 11154 was parked in the vicinity of the **SUBJECT PREMISES**. Alexandria Reed was observed departing the **SUBJECT PREMISES** late morning in the gold Chrysler 300M and the vehicle was located a short time later parked at Applebee's in Groton, CT. This vehicle is registered to William MILLETT, ███ Cove Road #2, Lyme, CT.

54.    Later in the evening of October 31, 2017, the gold Chrysler 300M with Connecticut registration AH 11154 and a red Mitsubishi Eclipse with Connecticut registration 5AL HV2, were parked in the vicinity of the **SUBJECT PREMISES**. The red Mitsubishi Eclipse with Connecticut registration 5AL HV2 is registered to William **MILLETT**, ███ Cove Road #2, Lyme, CT. Searches conducted by the Connecticut State Police in law enforcement databases revealed the only vehicles currently registered to William **MILLETT** are the gold Chrysler 300M the red Mitsubishi Eclipse. There are no vehicles registered to Alexandria Reed or Alexandria Millett.

55.    On November 2, 2017, surveillance conducted at the **SUBJECT PREMISES** revealed the gold Chrysler 300M with Connecticut registration AH 11154 and the red Mitsubishi Eclipse with Connecticut registration 5AL HV2, were parked in the vicinity of the **SUBJECT PREMISES**. William **MILLETT** was observed departing the **SUBJECT PREMISES** at approximately 7:13 AM, in the red Mitsubishi Eclipse with Connecticut registration 5AL HV2.

56.    On November 2, 2017, the Connecticut Department of Labor advised that **MILLETT** is employed at Sullivan Lawn Services, LLC, 8 Piney Branch Road, Ivoryton, CT and the last address of record at the Connecticut Department of Labor for **MILLETT** is ███ Cove Road



#2, Lyme, CT.

57.     On November 2, 2017, United States Postal Inspection Service (USPIS) Inspector David Lindberg advised that **MILLETT** currently receives mail at ▬ Cove Road #2, Lyme, CT and at the **SUBJECT PREMISES**.

58.     The Connecticut Department of Children and Families (DCF) advised ▬



### COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

59.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the **SUBJECT PREMISES**, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

60.     *Probable cause.*  I submit that if a computer or storage medium is found on the **SUBJECT PREMISES**, there is probable cause to believe the records described in Attachment B will be stored on that computer or storage medium, for at least the following reasons:

    a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little



or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. While it is technically possible to delete this information, computer users typically do not erase or delete it, because special software is typically required for that task.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

61. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the **SUBJECT PREMISES** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium, but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

19



b.   As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that log (1) computer user account session times and durations; (2) computer activity associated with user accounts; (3) electronic storage media that connected with the computer; and (4) the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer, or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.   A person who has appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on



a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of a crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain (1) data that is evidence of how the computer was used; (2) data that was sent or received; (3) notes as to how the criminal conduct was achieved; (4) records of Internet discussions about the crime; and (5) other records that indicate the nature of the offense.

62. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

g. *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large

21



volume of information. Reviewing that information for things described in the warrant can take days or weeks, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

h. *Technical requirements.* Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the subject premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

i. *Variety of forms of electronic media.* Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

63. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

64. Because multiple people may share the **SUBJECT PREMISES** as a residence, it is possible that the **SUBJECT PREMISES** will contain storage media that are predominantly used, and perhaps owned, by a person who is not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.



## CONCLUSION

65.    Based on the aforementioned factual information, there is probable cause to believe, and I do believe, that evidence of the **TARGET OFFENSES** is located within the **TARGET PREMISEES**, which constitutes and contains items that constitute contraband, fruits, instrumentalities and evidence of crime, or material otherwise criminally possessed, or property that is or has been used as the means of committing the **TARGET OFFENSES**.

66.    In consideration of the foregoing, I respectfully request that this Court issue a warrant authorizing the search of the **TARGET PREMISES**, described in Attachment A, for the items more specifically identified in Attachment B.

### Request for Sealing

67.    It is also respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this warrant and application is necessary because the items and information to be seized are relevant to an ongoing criminal investigation. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, often by posting them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its



23

effectiveness.

Special Agent Ryan Mahar
Department of Homeland Security
Homeland Security Investigations

Subscribed and sworn to before me this _____ day of November, 2017.

/s/ William I. Garfinkel

HON. WILLIAM I. GARFINKEL
UNITED STATES MAGISTRATE JUDGE

24

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN THE MATTER OF THE APPLICATION    :    Misc. No. ___17mj1713___
OF THE UNITED STATES OF AMERICA   :
FOR A WARRANT AUTHORIZING THE    :    **Filed Under Seal**
SEARCH OF THE PREMISES KNOWN AS :
19 Joliet Court, Groton, Connecticut     :
                                      :

## ATTACHMENT A

### Property to Be Searched

The property to be searched is located at 19 Joliet Court, Groton, Connecticut and it is described as a two family, single story residence with gray siding, red window shutters, and a fenced backyard with a rear door for each unit. The building is marked with number 17 on the southeast corner of the residence facing the street. The entrance door to number 19 is furthest from the street and facing southwest.



26



UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN THE MATTER OF THE APPLICATION     :     Misc. No. ___17mj1713___
OF THE UNITED STATES OF AMERICA     :
FOR A WARRANT AUTHORIZING THE     :     **Filed Under Seal**
SEARCH OF THE PREMISES KNOWN AS     :
19 Joliet Court, Groton, Connecticut     :
_____ :

### **ATTACHMENT B**

### **Records to be Seized**

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2252A(a):

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

   e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

   f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

   h. evidence of the times the COMPUTER was used;

27



    i.   passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    j.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    k.   records of or information about Internet Protocol addresses used by the COMPUTER;

    l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    m.  contextual information necessary to understand the evidence described in this attachment.

    n.   Records and information showing access to and/or use of "Kik" to facilitate access with intent to view child pornography; and

    o.   Records and information relating or pertaining to the identity of the person or persons using or associated with Kik account **willsterman69**; and

    p.   Records and information relating or pertaining to the identity of the person or persons using or associated with **bottomboy0303@gmail.com**, **bibottom03@gmail.com**, and **bidaddy03@gmail.com**.

3.   Routers, modems, and network equipment used to connect computers to the Internet.

4.   Child pornography and child erotica.

5.   Records, information, and items relating to violations of the statutes described above including:

    a.   Records, information, and items relating to the occupancy or ownership of 19 Juliet Court, Groton, Connecticut including utility and telephone bills, mail envelopes, or addressed correspondence; Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

    b.   Records and information relating to the identity or location of the persons suspected of violating the statutes described above; and

    c.   Records and information relating to sexual exploitation of children, including correspondence and communications between users of Website A.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and

network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.